IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

KEITH JAY FISCHER and
DAWN MARIE FISCHER,

        Plaintiffs,

v.                                                                  CIVIL ACTION NO. 5:18-CV-167
                                                                    Judge Frederick P. Stamp, Jr.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT STATE FARM
MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR SUMMARY
<u>JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

NOW COME the Plaintiffs and hereby submit the following Memorandum in Opposition to

Defendant State Farm's Motion for Summary Judgment and Memorandum of Law in Support thereof,

stating as follows:

<u>**INTRODUCTION**</u>

The premise of Defendant State Farm's Motion for Summary Judgment is two-fold: (1) State

Farm argues that because it treated Mr. Fischer's new vehicle, the 2006 Mazda Miata, as a

replacement vehicle, an offer of underinsured motorist bodily injury coverage (hereinafter "UIM"

coverage) was not required; and (2) that even if an offer of UIM coverage was required upon purchase

of the Miata, it is Mr. Fischer's fault for not recognizing UIM coverage was not included on his

policy, and therefore, State Farm is not required to reform the policy by operation of law.  State Farm

contends that because of these two arguments, it is entitled to summary judgment on the remainder

of Plaintiffs' claims as "the claims are based on an alleged failure to make an offer of UIM coverage."

ECF No. 52 at 18. These arguments are without merit and fail to address the most prevalent issues at

the heart of this matter – (1) Mr. Fischer did not want his Mazda Miata to replace his 1987 Chevrolet

truck as Mr. Fischer continued to own the 1987 Chevrolet truck, which State Farm, through the Garvey Agency, erroneously treated as a replacement vehicle; and (2) Mr. Fischer specifically asked State Farm for "full coverage," including UIM coverage on the Mazda Miata when it was purchased in December of 2015, thus mandating inclusion of UIM coverage pursuant to W.Va. Code §33-6-31d. Notwithstanding State Farm's failure to address these issues, which in and of themselves demonstrate that State Farm has failed to establish that there is no genuine dispute of any material fact in this matter, State Farm's arguments are also not supported by West Virginia law.

## STATEMENT OF FACTS

Keith "Jay" Fischer and Dawn Marie Fischer are State Farm insureds.  The Fischers had approximately six of their vehicles insured by State Farm. *See* Exhibit A, FISCHER CLAIM FILE 000641-000643. One of the vehicles insured by State Farm was a 1987 Chevy truck which Mr. Fischer used seasonally, as he and his son would use the truck during the summer months and store the truck during the winter months. *See* Exhibit B, Dep. Transcript of Keith Fischer, Pg. 110, Lines 10-15.

With respect to the Chevy truck, Mr. Fischer always instructed his State Farm insurance agent, the William Garvey Jr. Insurance Agency, Inc., to provide him with the minimum amount of insurance required by state law. *See id*., Pg. 117, Lines 18-20. Mr. Fischer would then remove all insurance coverage from the truck each October and the truck would remain without coverage until approximately April of the following year. *See id.*, Pg. 126, Lines 13-14. Mr. Fischer has testified specifically, "I would put it on in the April timeframe and take it off in October." *See id.*

Following this trend, in April of 2015, Mr. Fischer requested that insurance coverage be put on the 1987 Chevy truck. *See id.,* Pg. 109, Lines 9-15. On April 21, 2015, Mr. Fischer signed a selection/rejection form, which had been completed for him, rejecting underinsured motorist bodily injury coverage benefits for the policy covering the Chevy truck. *See id.,* Pg. 117, Lines 1-4. Notably,

the required "Important Notice" explaining the coverages was not provided with the selection/rejection form. *See* Exhibit C, Dep. Transcript of Jason McKinney, Pg. 106, Lines 20-25. Months later, in December of 2015, Mr. Fischer purchased a 2006 Mazda Miata. *See* Exhibit B, Dep. Transcript of Keith Fischer, Pg. 125, Lines 3-11. Upon purchase, Mr. Fischer  informed the Garvey Agency that he purchased a new vehicle and that he wanted full coverage on the 2006 Mazda Miata. *See* Exhibit A. The employee of the Garvey Agency with whom Mr. Fischer spoke at this time was Kim Moore. Unfortunately, Kim Moore failed to honor Mr. Fischer's request and instead of issuing a new insurance policy for the Miata, treated the Miata as a replacement vehicle under the policy that insured the 1987 Chevy – a policy without UIM benefits. *See* Exhibit D, Dep. Transcript of William Garvey, Pg. 47, Lines 6-24; Pg. 48, Lines 1-7. Ms. Moore treated the Miata as a replacement vehicle even though Mr. Fischer still owned the Chevy truck, and despite the fact that Mr. Fischer requested a comprehensive insurance policy, including UIM coverage. *See* Exhibit D, Dep. Transcript of William Garvey, Pg. 24, Lines 8-10; *See also* Exhibit C, Dep. Transcript of Jason McKinney, Pg. 40, Lines 22-25; Pg. 41, Lines 1-2; Pg. 41, Lines 14-19; Exhibit U, FISCHER CLAIM FILE 000090.

In August of 2017, Mr. Fischer was involved in a severe automobile collision in Washington County, Pennsylvania, sustaining serious injuries, including a brain injury resulting in approximately $52,000 in medical bills. *See* Exhibit E, FISCHER CLAIM FILE 002300; Exhibit F, Fischer0295-0296; Exhibit T, Answer, ¶ 4. After the collision, Mr. Fischer obtained counsel, David Cross, to represent him with respect to the August 2, 2017 crash. *See* Exhibit G, FISCHER CLAIM FILE 000664. Mr. Cross was able to secure a settlement with the tortfeasor's carrier, substantially exhausting the tortfeasor's liability limits of $50,000. *See* Exhibit H, FISCHER CLAIM FILE 000358. During his representation of Mr. Fischer, Mr. Cross wrote to State Farm and inquired as to whether UIM coverage was available under Mr. Fischer's automobile insurance policy. *See*

Exhibit G. If not, Attorney Cross asked for documentation showing that a commercially reasonable offer of UIM coverage was made and rejected by Keith Fischer. *Id.*

Mr. Cross was initially advised by State Farm that Mr. Fischer did, in fact, have $100,000 in UIM benefits on the policy covering the Miata. *See* Exhibit I, FISCHER CLAIM FILE 002137. However, on November 9, 2017, State Farm sent correspondence advising that there was no UIM coverage on the subject policy. *See* Exhibit J, FISCHER CLAIM FILE 002143. State Farm provided the selection/rejection form from April of 2015 which showed the rejection of UIM coverage for the policy covering the 1987 Chevrolet truck. *See* Exhibit K, FISCHER CLAIM FILE 002139. Mr. Cross sent follow-up correspondence to State Farm and advised that an administrative error must have been made as Mr. Fischer specifically wanted "full coverage" for all of his vehicles except the 1987 Chevy truck. *See* Exhibit L, FISCHER CLAIM FILE 002141-002142. Nevertheless, State Farm affirmed its denial of UIM coverage, despite having never spoken to the Garvey Agency regarding the issue. *See* Exhibit M, FISCHER CLAIM FILE 000089. Mr. Cross followed up with State Farm after receiving this decision, and again explained:

> As I have previously advised you, when Mr. Fischer purchased the 2006 Mazda, that vehicle was not a replacement vehicle. It was a new vehicle which necessitated the issuance of a new policy. State Farm unilaterally decided not to include underinsured motorist bodily injury coverage benefits on that policy. It did not present an offer of underinsured motorist bodily injury coverage to Mr. Fischer on the new policy.

> *See* Exhibit N, FISCHER CLAIM FILE 002094-002098.

Despite this explanation of the clear error that had been made, State Farm still refused to reform Mr. Fischer's policy of insurance to include UIM coverage. Because of State Farm's refusal to reform the Fishers' policy to include UIM coverage, suit was filed against State Farm.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323-25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249 (citations omitted). *See also Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979), summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (quoting *Stevens v. Howard D. Johnson Co*., 181 F.2d 390, 394 (4th Cir.1950)).

## SUMMARY OF ARGUMENT

State Farm argues that it is entitled to Summary Judgment in this matter because (1) West Virginia law does not require an offer of UIM benefits to be made when a new vehicle is replacing

an old vehicle on a policy of insurance and the policyholder previously rejected UIM benefits on that policy, and (2) even if an offer of UIM coverage was required to be made in this matter, Plaintiffs' receipt of renewal notices and declarations pages showing no UIM coverage precludes State Farm from having to reform the policy of insurance to include UIM coverage. State Farm then takes a giant leap by arguing that because it believes an offer of UIM coverage was not required to be made, no other claims against State Farm can proceed.  These arguments are erroneous for several reasons. As an initial matter, Plaintiff Keith Jay Fischer told his State Farm agent that he had purchased a new vehicle, the Mazda Miata, and needed insurance on the same. *See* Exhibit B, Dep. Transcript of Keith Fischer, Page 125, Lines 9-11; Page 137, Lines 9-11; Exhibit M, FISCHER CLAIM FILE 000089.

Mr. Fischer did not ask State Farm to treat the new Miata as a replacement for his truck as he continued to own the truck when he bought the Miata. *Id.,* Page 125, Lines 12-15*;*Exhibit M, FISCHER CLAIM FILE 000089. Moreover, Mr. Fischer told State Farm he wanted full coverage on the policy. *See* Exhibit O, FISCHER CLAIM FILE 001399-001401. Therefore, an offer of UIM coverage was required to be made in December of 2015 when Mr. Fischer purchased the Miata, pursuant to *Bia*s *v. Nationwide Mut. Ins. Co*., 179 W.Va. 125, 365 S.E.2d 789 (1987), and  W.Va. Code §33-6-31(d), which requires an offer of UIM coverage to be made "upon any request of the named insured . . ."

Second,  even if an offer of UIM coverage was not required to be made in December of 2015, the selection/rejection form that Mr. Fischer signed in April of 2015 had to have been adequate in order for State Farm to gain the presumption that it made a commercially reasonable offer of UIM coverage. Here, State Farm's Rule 30(b) witness, Jason McKinney, admitted that nowhere in State Farm's possession is there documentation that the Important Notice that is required to be provided with the selection/rejection form which explains UIM coverage to insureds, was ever provided to

Mr. Fischer, thus prohibiting the presumption that the rejection was knowing and intelligent. *See* Exhibit C, Dep. Transcript of Jason McKinney, Pg. 106, Lines 20-25.

Third, even if the selection/rejection form Mr. Fischer signed in April of 2015 for the Chevrolet Truck was valid, W.Va. Code §33-6-31, *et seq*. does not create an irrebuttable presumption that a knowing and intelligent offer and rejection of UIM coverage was made. The *Bias* requirements still must be met. Fourth, State Farm's argument that even if UIM coverage was required to be offered in December of 2015, that Mr. Fischer's failure to realize that UIM coverage was not on his policy precludes his ability to have the policy reformed by operation of law, is not based on any caselaw. If this argument by State Farm is correct, it eviscerates the *Bias* doctrine altogether. Lastly, State Farm ignores the fact that Plaintiffs have asserted violations of the WVUTPA, common law doctrine of good faith and fair dealing, violations of the Insurance Commissioner's Regulations, as well as errors and omissions claims against the Plaintiffs' State Farm agent, allegations that are not dependent on the issue of whether UIM coverage was required to be offered when the Miata was purchased. Thus, there is no support for State Farm's arguments that the remainder of the Fischers' claims as set forth in the Complaint must be dismissed.

## **ARGUMENT**

1. **State Farm ignores the errors and omissions claim at the heart of Mr. and Mrs. Fischer's Complaint, which is that Mr. <u>Fischer did not ask for the 2006 Mazda Miata to replace the 1987 Chevrolet Truck</u> on the prior policy of insurance. He <u>asked for full coverage on the new vehicle</u>, including UIM coverage, and thus, an offer of UIM coverage was required to be made upon purchase of the Miata.**

Pursuant to W.Va. Code §33-6-31(d)(a):

> Optional limits of . . . underinsured motor vehicle coverage required by §33-6-31 of this code shall be made available to the named insured at the time of initial application for liability coverage **and upon any request of the named insured** on a form prepared and made available by the Insurance Commissioner. The contents of the form shall be prescribed by the commissioner and shall specifically inform the named insured of the coverage offered. (emphasis added).

7

In the matter at hand, Mr. Fischer purchased a new vehicle, a 2006 Mazda Miata in December of 2015. *See* Exhibit B, Dep. Transcript of Keith Fischer, Pg. 125, Lines 3-11. Upon purchasing the Miata, Mr. Fischer contacted his State Farm agent to procure automobile insurance for the new vehicle. Mr. Fischer spoke with Kim Moore, an employee of the Garvey Agency. *Id*. Mr. Fischer did not want the Miata to be treated as a replacement for his Chevy truck:

> Q: Okay? Tell me, what discussion or discussions you had with anyone at Mr. Garvey's agency about when you got the Mazda Miata.
>
> A: Like any other vehicle, I just called them up, said, "I bought a car, I want to add it to my insurance."
>
> Q: Okay. And did Kim Moore tell you that you – she would be replacing the Mazda on the Chevy pickup truck policy?
>
> A. No.

*See* Exhibit B*,* Dep. Transcript of Keith Fischer, Pg. 125, Lines 6-15.

The Chevy truck was a seasonal truck that Mr. Fischer and his son would use during the summer months, and therefore place coverage on the truck.  Mr. Fischer would remove coverage beginning in October. *See id.,* Pg. 126, Lines 3-14. Mr. Fischer still owned the Chevy truck in December of 2015 when he purchased the Miata and was not seeking to replace the Chevy. *See* Exhibit D, Dep. Transcript of William Garvey, Pg. 24, Lines 8-10. Mr. Fischer would have taken the coverage off of the truck in October of 2015, prior to purchasing the Miata. *See* Exhibit B*,* Dep. Transcript of Keith Fisher, Pg. 126, Lines 3-14; Pg. 135, Lines 1-6. Moreover, Mr. Fischer advised State Farm that while he wanted the minimum coverage required on his Chevy truck, he wanted "full" coverage on his 2006 Mazda Miata, including UIM coverage.  *See* Exhibit O, FISCHER CLAIM FILE 001399-001401.

Thus, the Garvey Agency, by unilaterally deciding to treat the 2006 Mazda Miata as a replacement vehicle instead of issuing a new policy with full coverage as requested by Mr. Fischer,

clearly committed an error and omission which is imputed to State Farm.[1] *See* Exhibit Q, State Farm's Response to RFA No. 12 within Defendant's Answers and Responses to Plaintiffs' First Set of Requests for Admission. There was no discussion about the replacement of the Chevy with the Miata – nor was there a conversation with respect to UIM coverage whatsoever:

> Q.  When you put the -- wanted insurance on the Mazda –
>
> A.  Yes.
>
> Q.   -- what discussion did you have with her about what coverage you wanted?
>
> A.  Generally, when I would call the office adding a car, they would ask me, "Do you want full coverage or not." It's -- was the two options. Full coverage, I would take out on cars that I had a loan with, because it was a requirement. If it was an older vehicle, I didn't have that much invested in it, then I would just say, "No full coverage." To my knowledge, the policies were the same, except for it didn't have collision.

*See* Exhibit B, Dep. Transcript of Keith Fischer, Pg. 135, Lines 7-20.

Because the Miata was a new vehicle, and because Mr. Fischer specifically requested full coverage, an offer of UIM coverage was required to be made pursuant to the two triggering events within West Virginia Code §33-6-31(d)(a) – (1) the initial application for liability coverage and (2) upon request of the named insured. State Farm agrees that this is a triggering event upon which an offer of UIM coverage is required to be made. ECF No. 53 at 7. This is consistent with the testimony of the Plaintiffs' expert, Tommy Michaels, an expert in the insurance industry, who testified as follows:

> State Farm mischaracterizes the 2006 Mazda Miata as a replacement when that was not the intent of Keith Fischer or how State Farm handled it. The 1987 Chevrolet was used very little and Keith Fischer intended to insure it only during part of the year. He also wanted to have the least amount of insurance on it. His intent in December when the 1987 Chevrolet was changed to the 2006 Mazda

---

[1] Although the Garvey agency is not a party to this lawsuit, State Farm has agreed that it is vicariously liable for any errors and omissions on the part of the Garvey Agency. *See* Exhibit P, May 13, 2019 email from Tiffany Durst to Scott Blass.

> was to put the 1987 Chevrolet back on the policy in April. A review of documents in the Agent's File confirms that was his intent and the agent's intent. In the file is a computerized note that states "ADDED 1987 CHEVY BACK ON." Another computerized note that reads CHANGE FROM 87 CHEVY TO 06 MAZDA ADD COMP ZERO DED. This was a change on the policy and not a replacement . . . . If the 2006 Mazda was replacing the 1987 Chevrolet, as happened with the 2006 Mazda and the 2013 Chevrolet Camaro, it would have been noted in the agent's file as a replacement.

ECF No. 29-1 at 11.

As is clear from Mr. Michaels' report, when the Garvey Agency treated the 2006 Mazda Miata as a replacement vehicle, it clearly committed an error and omission. The Miata was not to be a replacement vehicle, and thus, an offer of UIM coverage was required. Moreover, when Mr. Fischer requested "full coverage," pursuant to W.Va. Code §33-6-31(d)(a), an offer of UIM coverage was required to be made as the statute clearly indicates an offer is required upon request of an insured. *See* Exhibit A, FISCHER CLAIM FILE 000641-643. State Farm has no expert who can speak to the errors and omissions of the Garvey Agency,[2] and indeed State Farm agent William Garvey has all but admitted that errors and omissions were committed by his Agency:

> Q. All right. If it hadn't been classified as a replacement vehicle, it would have been classified as a new vehicle that needed a new application; correct?
>
> A. Correct.
>
> Q. And if it was a new vehicle and needed a new application, you would have had to have given Mr. Fischer the forms to review and sign indicating how much, if any, underinsured motorist bodily injury coverage he wanted on his policy; correct?
>
> A. That is correct.
>
> Q. You would agree with me that if Mr. Fischer wanted underinsured motorist bodily injury coverage on the policy

---

[2] State Farm's expert J. Rudy Martin has admitted that he was not retained to analyze the errors and omissions of the Garvey agency. *See* Exhibit O, Dep. Transcript of J. Rudy Martin, Pg. 14, Lines 15-24; Pg. 15, Lines 1-19; Pg. 36, Lines 3-7.

covering his Mazda and that coverage was not provided to him, that would be an error on the part of the agency?

A. Yes.

*See* Exhibit D, Dep. Transcript of William Garvey, Pg. 48, Lines 3-19.

Moreover, State Farm's Rule 30(b) witness Jason McKinney further testified:

Q. Sure. And does State Farm acknowledge that even before this lawsuit was filed, it was Mr. Fischer's contention that he conveyed to representatives of the Garvey Agency that he wanted full coverage on his Mazda Miata?

A. Well, I don't know. Full coverage is such a -- that term means -- from my experience means a lot to a lot of different people, so –

Q. And State Farm recognizes that. State Farm recognizes the phrase full coverage means different things to different people, correct?

A. It can be. It just -- it depends on who the individual is making the statement what they're asking for.

Q. And if there's some confusion on the part of the agent as to what is meant by full coverage, what does State Farm acknowledge is the agent's responsibility?

A. I think the agent's responsibility when anybody's procuring -- you know, they're trying to purchase insurance, is to explain all the coverages available and then so the policyholder or the insured or prospective insured has an understanding what they are or not purchasing.

*See* Exhibit C, Dep. Transcript of Jason McKinney, Pg. 41, Lines 20-24; Pg. 42, Lines 1-18.

While a cross-motion for summary judgment as to the errors and omissions of the William Garvey Agency would likely be appropriate, it is without a doubt, that at a minimum, there is a dispute with respect to the December 2015 conversation between Mr. Fischer and the Garvey Agency when Mr. Fischer purchased the Mazda Miata.

As further testified to by Mr. Garvey:

Q. All right. If the customer called and said, I am – I have purchased a new vehicle, and I have not – it is not a replacement vehicle. It

is a new vehicle in my fleet of six or seven cars that I have, would
thatbe an application or a change request?

A.  If, upon asking the customer if they were not going to be getting
rid of another vehicle and it was an additional vehicle that they
wanted coverage on in addition to the other vehicles that they
had coverage on, then we would complete an application.

*See* Exhibit D*,* Dep. Transcript of William Garvey*,* Page 20, Lines 13-22.

Again, there is no dispute that the Miata was not intended to be a replacement vehicle and that

Mr. Fischer asked for a comprehensive policy, and thus, an offer of UIM benefits was required to be

made as admitted to by Mr. Garvey. *See* Exhibit N, FISCHER CLAIM FILE 002094-002098.

While State Farm goes to great lengths to discuss non-binding caselaw from other states to

support its theory that a new offer of UIM coverage is not required to be made when a vehicle replaces

another – State Farm again misses the underlying issue – that Mr. Fischer was not replacing the 1987

Chevrolet truck with the 2006 Mazda Miata as he still owned the 1987 Chevrolet truck. Even

Mr. Garvey agreed to this:

Q.  He didn't replace that truck. He still owned the truck; right?

A.  That is true, he did still own the truck.

*See* Exhibit D, Dep. Transcript of William Garvey, Pg. 24, Lines 8-10.

The only evidence in the record regarding the coverage Mr. Fischer wanted – is Mr. Fischer's

testimony.  State Farm team manager, Stacy Johnson acknowledged this fact:

Q.  So the only information that State Farm had with respect to the
conversation that took place between Mr. Fischer and his
agency's office with respect to what coverage he wanted on the
Miata is by Mr. Fischer's own statement, correct? (Ms. Durst:
Object to the form.)

Q:  Can you repeat the question? I'm sorry.

Q.  Sure. . . .The only information that State Farm had with respect
to the conversation that took place between Mr. Fischer and his
agency's office is the statement of Mr. Fischer as to how that
conversation went. (Object to the form)

> A:   And specifically the conversation with Mr. Fischer, like the actual discussion with whoever he had. I would – I mean based on my review of the claim, that sounds accurate.

*See* Exhibit S, Dep. Transcript of Stacy Johnson, Pg. 115, Lines 8-15; Pg. 116, Line 1.

> Q.   Okay. So when Mr. Fischer bought the Mazda Miata and called his agency, do you have any idea of the discussions that he had with the agency?

> A.   No. No idea.

*See id.*, Page 96, Lines 23-25; Page 97, Line 1.

> Q.   Would it be helpful to know what the conversation was between Mr. Fischer and Ken Moore at the time he called the agency and said, hey, I bought a new vehicle?

> A.   It would.

*See id.*, Pg. 106,  Lines 20-26.

Simply because State Farm chooses to ignore this testimony does not lead to a finding that it was appropriate for the Garvey Agency to unilaterally treat the Miata as a replacement vehicle. Accordingly, the first prong of Defendant State Farm's argument is without merit and thus, summary judgment in that regard is not proper.

**2.    Even if the Court finds that an offer of UIM coverage was not required to be made in December of 2015, there is still a dispute regarding the validity of the Selection/Rejection form signed by Mr. Fischer in April of 2015 with respect to the Chevy truck.**

Pursuant to *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 3126, 65 S.E.2d 789, 790 (1987), "W. Va. Code § 33–6–31(b) addresses both uninsured and underinsured motorist coverage . . . . The section's third proviso is that each policy shall offer an option for both uninsured and underinsured motorist coverage up to the dollar limits of the liability insurance purchased by the insured." The statute says that an underinsurance option shall be offered, and this language must be afforded a mandatory connotation. Syl. Pt. 1, *Nelson v. West Virginia Public Employees Insurance Board*, 171 W.Va. 445, 300 S.E.2d 86 (1982). Where an offer of optional coverage is required by

13

statute, the insurer has the burden of proving that an effective offer was made. *Bias* at 791, 126 (citing *Holman v. All Nation Insurance Co.*, 288 N.W.2d 244 (Minn.1980)). The insurer also has the burden of providing that any rejection of said offer by the insured was knowing and informed. *Id.* (citing *Kimbrell v. Great American Ins. Co.,* 420 So.2d 1086 (Fla.1982); *Lane v. Waste Management, Inc.*, 432 So.2d 70 (Fla.App.Dist.1983)).  Moreover, the insurer's offer must be made in a commercially reasonable manner, so as to **provide the insured with adequate information to make an intelligent decision**.(emphasis added) *Id.* (citing *State Farm Mutual Automobile Insurance Co. v. Wannamaker*, 291 S.C. 518, 354 S.E.2d 555 (SC 1987)). "When an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured." *Id.*

Pursuant to W.Va. Code §33-6-31d(a), which addresses the optional limits of underinsured motor vehicle coverage required by §33-6-31, the statute states that the offer regarding these optional limits shall be made on a form, the "contents of [which] shall be prescribed by the commissioner and shall specifically inform the named insured of the coverage offered and the rate calculation for the coverage, including, but not limited to, levels and amounts of the coverage available and the number of vehicles which will be subject to the coverage." Pursuant to the Office of the Insurance Commissioner's Informational Letter No. 193, "statutory compliance in the reproduction of the forms contained herein necessary to create a presumption of an effective offer of optional coverages and a knowing and intelligent election or rejection is achieved so long as the reproduced forms provide ALL the information set forth within the Insurance Commissioner's promulgated forms."

Among the information included within the Insurance Commissioner's promulgated forms is the "Important Notice" that is provided with the selection/rejection forms which advises the insured of the coverages they are being offered and what those coverages are.  Specifically, the Insurance Commissioner's Informational Letter goes on to state, "[t]he revised forms developed by the

14

Insurance Commissioner pursuant to W.Va. Code §33-6-31d consist of two parts: (1) The "Important Notice" and (2) Alternative Forms A and B. The Important Notice must be provided in all circumstances where an offer of UM and UIM coverages are provided to an applicant or named insured. **The Important Notice must be combined by the insurer with either Form A or Form B, as appropriate**." (emphasis added).

There is no evidence whatsoever that the Important Notice that is required to be provided with the selection/rejection forms was ever provided with the selection/rejection forms that Mr. Fischer signed in April of 2015 with respect to the 1987 Chevrolet Truck. This was also admitted to by State Farm's Rule 30(b) representative, Jason McKinney:

> Q. So State Farm agrees that nothing in its claim file demonstrates that the important notice explaining the nature of underinsured motorist coverage was sent to Mr. Fischer, correct?
>
> A. I don't have any documentation in – that I can find to demonstrates it's in there.

*See* Exhibit C, Dep. Transcript of Jason McKinney, Pg. 106, Lines 20-25.

If the Notice is not provided, the insured is not able to make a knowing and intelligent waiver of UIM coverage; the selection/rejection forms themselves, without the Important Notice explaining the coverages, are meaningless and do not provide the insured with any information whatsoever as to what they are selecting or rejecting. In sum, without the Notice, an insured cannot make a meaningful and intelligent selection or rejection of UIM coverage. Additionally, with respect to the April 21, 2015 selection/rejection form itself – nowhere on the form did it indicate which vehicle was involved. At the time he signed the form, Mr. Fischer and his wife had multiple vehicles insured by State Farm. Because the form did not identify the vehicle involved, and because an Important Notice did not accompany the form as required - it is hard to understand how the April 21, 2015 form can be deemed valid. Adjuster Stacy Johnson's own testimony supports this fact:

> Q. Okay. But without having to refer to your notes, you did not know as of today which vehicle the form was applied to. Is that accurate?
>
> A. In regards to there's no car on the form, that's accurate . . . .

*See* Exhibit S, Dep. Transcript of Stacy Johnson, Page 95, Lines 19-23.

Thus, for argument's sake, even if State Farm is correct that it was not required to provide a new offer of UIM coverage to Mr. Fischer upon his purchase of the Mazda Miata in December of 2015, State Farm is still not entitled to summary judgment on the issue merely because Mr. Fischer signed a selection/rejection form for the 1987 Chevrolet truck in April of 2015, as there is no proof that the selection/rejection form for the 1987 Chevrolet Truck was valid - contrary to State Farm's argument that "the rejection of UIM coverage executed by Plaintiff with respect to the prior vehicle was still valid." ECF No. 52 at 2. What the testimony of State Farm's Rule 30(b) representative shows is that there is a genuine dispute of material fact as to not only (1) whether the April 21, 2015 selection/rejection form signed by Mr. Fischer was valid, but also (2) whether the policy of insurance covering Mr. Fischer's Mazda Miata was required to be reformed by operation of law to include UIM coverage.

**3. Even if the Court finds that UIM coverage was not required to be offered upon Mr. Fischer's purchase of the Mazda Miata, and further, that the April 21, 2015 selection/rejection form was valid, State Farm has still failed to satisfy its burden of proof that the selection/rejection of UIM coverage was knowing and intelligent on the part of Mr. Fischer in April of 2015. Thus, a genuine dispute of material fact exists.**

While a signed selection/rejection form creates a presumption that a knowing and intelligent offer and waiver of UIM coverage was made, it is not an irrebuttable presumption. The United States District Court for the Southern District of West Virginia explained the technicalities of the presumption associated with the selection/rejection form in *Martin v. State Farm Mut. Auto. Ins. Co*, 809 F. Supp.2d 496, (S.D.W.Va. 2011), in which Judge Chambers held:

> If an insurer complies with every aspect of the Informational Letters, **it is still entitled to no more than a presumption that it has**

16

**complied with the requirements laid out in Bias**. A presumption is "[a] legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts." Black's Law Dictionary (9th ed. 2009). **The creation of the presumption is only given meaning when examined within the context of Bias**. There, the West Virginia Supreme Court of Appeals concluded that the insurer bears the evidentiary burden of proving that an effective offer of the optional insurance was made. *Bias*, 365 S.E.2d 789 at Syl. Pt. 1. Without the imposition of the evidentiary burden in Bias, the need for the statutory presumption created by § 33–6–31d would be nonexistent. Further, Bias is still relied on by both West Virginia courts and the federal courts in interpreting and applying § 33–6–31d. For example, in Burrows, the West Virginia Supreme Court stated that "[t]he statute and our decision in Bias v. Nationwide Mut. Ins. Co. [ ] encourage insurance companies to make a real effort to inform customers about the opportunity for underinsured motorist coverage." Burrows, 600 S.E.2d at 571. Bias did not become obsolete when the West Virginia legislature passed § 33–6–31d. It is still a guidepost for determining what is necessary to provide a "commercially reasonable" offer pursuant to § 33–6–31(b). And it is what guides courts in analyzing the facts of a specific offer of the optional coverage when an insurer is not entitled to the statutory presumption.

(emphasis added).

With respect to the selection/rejection form Mr. Fischer signed in April of 2015, Mr. Fischer

testified as follows:

> Q.  And so, is it safe to say that you understood uninsured and underinsured motorist coverage?
>
> A.  No.
>
> Q.  No. Even though you had coverages on your vehicle prior?
>
> A.  Right

*See* Exhibit B, Dep. Transcript of Keith Fischer, Page 116, Lines 12-17.

> Q.  Okay. Now, based on the complaint that was filed on your behalf, it's my understanding that you claim you had insurance on the Chevy, the 1987 Chevy truck –
>
> A.  Uh-huh.

17

> Q. -- placed through Mr. Garvey's agency. And then – and that was
> in April of 2015. And that you requested that UIM coverage be
> removed from that truck.
>
> A. Can you clarify what "UIM coverage" is?
>
> Q. I'm sorry. Underinsured motorist coverage.
>
> A. No. I didn't request that it be removed from the truck.
>
> Q. Okay.

*See id.*, Pg. 109, Lines 9-19.

Without knowing what UIM coverage was, Mr. Fischer could not knowingly and intelligently reject the same. Moreover, Mr. Fischer's testimony with respect to his conversation with Kim Moore of the Garvey Agency in April of 2015 further supports that a commercially reasonable offer of underinsured motorist bodily injury coverage benefits was not made with respect to the 1987 Chevrolet Truck:

> Q. Okay. Can you tell me why you rejected underinsured motorist
> coverage on the Chevy truck in April of 2015 then?
>
> A. Yeah. I didn't realize I was rejecting underinsured motorist
> coverage. I called Kim and talked to her, and told her I wanted
> to reduce the insurance on the truck to the minimum requirement
> by state law. And she said, "Okay, we can do that." And I asked
> her how much it was going to reduce my costs?  And I can't
> remember what the amount was, but she told me, and she sent
> me these forms to sign.

*See id.,* Page 117, Lines 13-24.

With respect to the forms, Mr. Fischer further testified:

> Q. Okay. Did you understand, Mr. Fischer, that uninsured motorist
> coverage, the one that was on the back of this form, that that was
> mandatory, and that underinsured was optional?
>
> A. No.
>
> Q. You didn't understand that?
>
> A. Nobody ever explained it to me.

18

*See id.,* Page 129, Line 24; Page 120, Lines 1-6.

> Q. With regard to -- well, let me ask it this way. At any point in time, since you've had insurance with Mr. Garvey's agency, it's your testimony no one ever explained to you the difference between uninsured and underinsured.  Is that your testimony?
>
> A. Yes.

*See id.,* Page 130, Lines 11-16.

> Q. Do you believe from a factual perspective, Mr. Fischer, that State Farm didn't – through Mr. Garvey, didn't explain the coverages to you correctly, and provide information so you could select coverage that would protect you, and because of that failure, you didn't have insurance – underinsured motorist coverage on your policy at the time of the accident?
>
> A. Correct.

*See id.,* Page 145, Lines 10-18.

Additionally, there is no documentation that shows the *Bias* requirements were met with respect to his signing of the UIM selection/rejection form in April of 2015:

> Q. Okay. Now, you've agreed with me that this says – it said "Reject" and you signed it?
>
> A. I agree with you, yes.
>
> Q. Okay. When you got this, and you're saying that you didn't understand the difference between uninsured and underinsured, you never called Kim and said, Do I have the option to reject this? Can I reject this?
>
> A. It wasn't a concern of mine. I just – I asked to have the state minimum insurance put on the truck. They sent me a form and I signed it.

*See id.,* Pg. 131, Lines 21-24; Pg. 132, Lines 1-6.

"The plain language of ***Bias*** provides that if an insurer fails to prove an effective offer and a knowing waiver of the statutorily required coverage, then *that coverage* becomes part of the policy by operation of law." *Riffle v. State Farm Mut. Auto. Ins. Co.,* 186 W.Va. 54, 55, 410 S.E.2d 413, 414

(1991). Clearly, based on the above testimony, there is no documentation whatsoever that an effective offer and a knowing waiver of UIM coverage was made by Mr. Fischer in April of 2015 regardless of the documentation indicating UIM coverage was rejected on the 1987 Chevrolet truck, and thus, the *Bias* requirements have not been satisfied, precluding summary judgment from being awarded to State Farm in this matter.

**4.  Mr. Fischer's review of his declarations page/renewal notices has no impact whatsoever on whether his policy must be reformed by operation of law.**

State Farm's last attempt at persuading this Court that it is entitled to summary judgment is through an argument that is not supported by West Virginia law and further, is in direct contravention to the heart of the *Bias* doctrine. Specifically, State Farm argues that because Mr. Fischer received renewals and declarations notices showing that there was no UIM benefits on the policy of insurance covering the Miata, even if an offer of UIM coverage was required to be made, Mr. Fischer's failure to look at these documents precludes him from having his policy of insurance reformed by operation of law to include UIM coverage. This is not the law in West Virginia. Rather, it is in direct contravention to over thirty years of well-settled precedent in West Virginia.  State Farm contends that it is the duty of its insureds to ensure that the coverage the insured wants is actually on their policy of insurance. If this Court were to find this argument by State Farm persuasive, it would eviscerate the requirements of *Bias* – that is a mandatory offer of UIM benefits, and a knowing and intelligent rejection of the same by insureds in order for a rejection of those benefits to stand. Here, State Farm's argument is essentially that insureds must make certain that their insurance agents are doing their job, and if the agent fails to properly do their job, it is the fault of the insureds. That is not how the procurement of insurance in West Virginia works as admitted to by Mr. Garvey:

> Q.  You -- would you agree with me that you and the members of
> your agency team have an obligation to fulfill your duties as --
> to your customer as a reasonably prudent agent would?
>
> A.  Yes.

Q. And that would include making sure that you have a full
understanding of the coverage that your customer wants;
correct?

A. That's correct.

Q. Making sure to explain to the customer whether you can procure
the coverage that's being sought; correct?

A. That's correct.

Q. And making sure the customer is not confused about what
coverage is applicable to which policy covering which vehicle?

A. That's correct.

*See* Exhibit D, Dep. Transcript of William Garvey, Pg. 57, Lines 13-24; Pg. 58, Lines 1-5.

Moreover, even if the last thirty years of precedent in West Virginia were not controlling, it

is still clear that regardless of whether Mr. Fischer would have looked at this documentation – he still

had no idea what the same stood for as his agent failed to fully inform him of the coverages he could

select or reject. Mr. Fischer testified to this in his deposition as follows:

Q. Okay. Because you've seen those renewal notices now, haven't
you?

A. Uh-huh.

Q. Yes?

A. I pay -- yes.

Q. And you understand that the renewal notices do not show any
underinsured motorist coverage at the time of the accident?

A. No, I don't understand that.

*See* Exhibit B, Dep. Transcript of Keith Fischer, Page 128, Lines 9-17.

Further indication that Mr. Fischer did not understand what the renewal notices meant is the

following testimony:

A.  Can you clarify what "UIM coverage" is?

21

Q.  I'm sorry. Underinsured motorist coverage.

*See Id.,* Pg. 109, Lines 16-19.

Even if Mr. Fischer had looked at the renewal notices, he would not have understood that not having a "W" on the same meant he lacked underinsured motorist bodily injury coverage benefits. Regardless, it is not Mr. Fischer's duty to ensure he has the coverage that he asked for – if it was – there would be no such thing as the West Virginia Unfair Trade Practices Act or the Insurance Commissioner's regulations which place duties upon both insurance agents and insurers. Nonetheless, State Farm has again chosen to place its interests ahead of the interests of its insureds, Mr. and Mrs. Fischer, by placing the blame on the Fischers for not receiving the coverage that they asked for. Clearly, this is not the law in West Virginia and thus, this argument must be disregarded by the Court.

**5.  State Farm fails to set forth any support for its argument that the remainder of Plaintiffs' claims should be dismissed by this Court**

The last argument set forth by State Farm reads as follows: "t[he Complaint also asserted causes of action for common law 'bad faith', purported violations of the Unfair Trade Practices Act, negligence, and vicarious liability for the actions of the Garvey Agency . . . . . Each of these claims is premised on the assertion that State Farm failed to make an offer of UIM coverage for the 2006 Mazda Miata." ECF No. 53 at 18. In sum, State Farm attempts to argue that the only claims of Plaintiffs are those relating to the failure to reform the Fischers' policy of insurance to include UIM coverage. This is misleading to the Court and unsupported by the allegations set forth in the Complaint. For example, Paragraph 44 of the Plaintiffs' Complaint reads:  "The Defendant, State Farm, breached the implied covenant of good faith and fair dealing in connection with its handling of Plaintiffs' claims when it:

a.  Failed to timely and reasonably respond to communications from counsel for the Plaintiffs;

b.   Failed to timely and reasonably respond to requests from counsel for the Plaintiffs for a certified copy of the Plaintiffs' insurance policy and the applicable selection/rejection forms;

. . .

f.   Placed its own interests ahead of and above the interests of its insureds."

*See* Exhibit R, Complaint; *See also* ECF No. 29-1, Expert Report of Tommy Michaels discussing these violations by State Farm.

Moreover, with respect to Plaintiffs' allegations against State Farm under the WVUTPA and corresponding Insurance Commissioner's regulations, Plaintiffs alleged as in Paragraph 55-57 of the Complaint violations that do not relate to the issue of the reformation of the policy whatsoever. For example, Paragraph 55(g) asserts that State Farm failed to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the claim. *See id*.; *see also* ECF No. 29-1, Pg. 1-24. The testimony of State Farm employee Stacy Johnson further illustrates the validity of the remaining claims of Plaintiffs with respect to State Farm's violations of the West Virginia Unfair Trade Practices Act. For example, Stacy Johnson testified that the claims handling of her subordinate, Sounjanette Hagan, with respect to actions taken during the handling of the claim was untimely:

Q.   As her claims supervisor, as the team manager, is that an acceptable time frame for your claim specialist to take to do an action that you instructed them to do?

A.   No. I would have preferred it to have been done sooner.

Q.   Is that why you were following up with her?

A.   That is why I was following up with her, yeah.

*See* Exhibit S, Dep. Transcript of Stacy Johnson, Pg. 86, Lines 14-22.

Clearly, not all of the claims set forth by Plaintiffs are derivative of whether or not an offer of UIM coverage was required to be made, and whether the policy was required to be reformed; and thus, these claims as set forth in the Complaint and as discussed in Tommy Michaels' Expert Report,

exist outside of those legal issues. Therefore, State Farm has not met its burden of proof pursuant to Rule 56 to show that the remaining claims of Plaintiffs should be dismissed. Additionally, State Farm failed to cite to any caselaw or other documents in support of this final argument. Thus, this final attempt by State Farm to dismiss Plaintiffs' entire cause of action without any support thereto must be dismissed.

## <u>CONCLUSION</u>

In sum, Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment ignores the factual disputes at the center of this matter and fails to recognize existing precedent in West Virginia, demonstrating that its arguments are without merit and must be dismissed. For this reason and the reasons set forth hereinabove, Plaintiffs request that this Court **DENY** State Farm's Motion for Summary Judgment, and for such other and further relief as this Court deems proper.

Respectfully submitted,

KEITH JAY FISCHER AND
DAWN MARIE FISCHER, Plaintiffs

By: ___*/s/*____*Erica Cross Conti*_____
SCOTT S. BLASS (#4628)
ERICA CROSS CONTI (#12974)
BORDAS & BORDAS, PLLC
1358 National Road
Wheeling, WV 26003
Telephone: (304) 242-8410
SBlass@Bordaslaw.com
*Counsel for Plaintiffs*

24

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

KEITH JAY FISCHER and
DAWN MARIE FISCHER,

        Plaintiffs,

                              Civil Action No. 5:18-CV-167

vs.

                              Honorable Frederick P. Stamp, Jr.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, INC.

        Defendant.

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2019, I electronically filed *PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Tiffany R. Durst, Esquire
Nathaniel D. Griffith, Esquire
Pullin, Fowler, Flanagan
Brown & Poe, PLLC
2414 Cranberry Square
Morgantown, WV 26508
*Counsel for Defendants*

                /s/     *Erica Cross Conti*
                SCOTT S. BLASS (#4628)
                ERICA CROSS CONTI (#12974)
                BORDAS & BORDAS, PLLC
                1358 National Road
                Wheeling, WV 26003
                Telephone: (304) 242-8410
                SBlass@Bordaslaw.com
                EConti@Bordaslaw.com
                *Counsel for Plaintiffs*